522 A.2d 961

**HILLIARD & BARTKO JOINT VENTURE**

v.

**FEDCO SYSTEMS, INC. and Gardiner & Gardiner, Inc.**

No. 72, Sept. Term, 1986.

Court of Appeals of Maryland.

March 27, 1987.

148

Stephan J. Boardman (James H. Hulme, Nancy S. Heermans and Arent, Fox, Kintner, Plotkin & Kahn, on brief) Washington, D.C. and Patricia C. Hilliard, Gen. Counsel, on brief), Forestville, for appellant.

Gail A. Nettleton, Washington, D.C. (Sadur & Pelland, Washington, D.C., on brief) for appellee Gardiner & Gardiner, Inc.

Steven M. Levine, Washington, D.C. (Paul T. Cuzmanes and Wilson, Elser, Moskowitz, Edelman & Dicker, Washington, D.C., on brief) for appellee, Fedco Systems, Inc.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ. and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

RODOWSKY, Judge.

At issue here is when limitations began to run in this building construction case on claims asserted in arbitration by the owners against the architect and builder. In *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.*, 274 Md. 307, 314, 334 A.2d 526, 530 (1975), we held that "it is for the courts and not the arbitrators to determine the timeliness of a demand for arbitration. . . ." Here the legal position of those defending the claims is that limitations began to run when the owners discovered that they might have one or more causes of action. The owners, although not disputing when "discovery" occurred, nevertheless assert that they have claims against the builder and against the architect which did not accrue until after "discovery."

Appellants, Don Hilliard and John H. Bartko, as joint venturers (H & B), own an 80,000 s.f. building, constructed from preengineered, metal sections and containing both warehouse and office space, which is leased to the appel-

lants' incorporated moving and storage business. Appellees are the architect, Fedco Systems, Inc. (Fedco), and the general contractor, Gardiner & Gardiner, Inc. (Gardiner). Fedco and Gardiner each contracted separately with H & B.[1] Fedco agreed to design and to supervise construction of the building, and Gardiner agreed to construct it. Each contract contained an arbitration clause. The party demanding arbitration was required to do so no later than the date by which the applicable statute of limitations would bar institution of legal or equitable proceedings based on the claim.[2]

---

**1.** The parties utilized standard forms of agreements suggested by the American Institute of Architects. Specifically, they are AIA document B–141 (January 1974 ed.) as to Fedco and, as to Gardiner, A–101 (11th ed. June 1977) and A–201, General Conditions of the Contract for Construction (13th ed. August 1976).

**2.** Article 11 of the H & B–Fedco contract provides in relevant part:
11.1 All claims, disputes and other matters in question between the parties to this Agreement, arising out of, or relating to this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.
11.2 Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The demand shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.
The general conditions of the H & B–Gardiner contract which are relevant to the issues presented here provide:
7.9 ARBITRATION
7.9.1 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.
7.9.2 Notice of the demand for arbitration shall be filed in writing with the other party to the Owner-Contractor Agreement and with the American Arbitration Association, and a copy shall be filed with the Architect. The demand for arbitration shall be made ... within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such

The building was plagued by leaks that were observed before construction was completed. Eventually, H & B sued both Fedco and Gardiner in the Circuit Court for Prince George's County. That complaint alleged that the leaks were caused by negligence of Gardiner during construction, and by negligence of Fedco in designing the building and in supervising construction. H & B also alleged that Gardiner had breached its contract by failing to provide a watertight building. Fedco and Gardiner sought to compel arbitration of the claims against them, and the court ordered arbitration. Four months later H & B filed demands for arbitration. Fedco and Gardiner then filed the subject actions seeking permanently to enjoin the arbitrations because H & B's demands were barred by limitations. Judgment was for Fedco and Gardiner. The trial court found that H & B knew that the building leaked more than three years before the demands for arbitration were filed.[3] H & B appealed to the Court of Special Appeals, which affirmed in an unreported opinion. We granted H & B's petition for certiorari which accepts fact-findings of the trial court and raises only questions of law.

The following chronology is relevant.

November 6, 1980 — Punch list inspection of building by representatives of contractor and of architect and by a partner of H & B.

---

claim, dispute or other matter in question would be barred by the applicable statute of limitations.

**3.** The arguments of all of the parties treat H & B's demands for arbitration as the events which stop the running of the statute of limitations as it is incorporated into the arbitration provisions. Consequently, we express no opinion concerning the effect, if any, on limitations of the earlier filing by H & B of a circuit court action against the contractor and architect.

November 7, 1980 — Letter from Fedco to Gardiner itemizing "items ... noted as being defective or needing further attention[,]" including: "Repair multiple roof leaks in the warehouse area and single roof leak in the office area of the building."

December 3, 1980 — Inspection of building made by representatives of H & B, Fedco, and Gardiner. Resulting punch list includes two items relating to leaks in the building.

Same — Date found by trial court as the date by which building was substantially complete and ready for occupancy.

December 19, 1980 — H & B is occupying office portion of building, storing some materials in warehouse portion, and paying electric bill.

Same — Latest date, as found by trial court, by which substantial completion, substantial payment by H & B, and partial occupancy had all occurred.

Same — Date argued by Gardiner and Fedco to be the latest date by which limitations began to run.

January 12, 1981 — Representative of Gardiner makes affidavit on requisition for final payment reflecting a balance of $163,978 on contract sum of $1,519,634.

February 4, 1981 — Fedco approves final payment to contractor.[4]

February 18, 1981 — Letter from Gardiner to Fedco confirming that all punch list items were completed.

February 20, 1981 — Letter of February 18 transmitted by architect to H & B.

February 23, 1981 — Letter from H & B to Fedco, with copy to Gardiner, stating that building continues to leak "from numerous points in the roof and around many of the skylights[,]" and through the walls. H & B states that Gardiner's work cannot be considered "final."

February 27, 1981 — Letter from Gardiner to H & B acknowledging responsibility for leaks that appear within one year, promising future corrective efforts, and requesting release of final payment.

March 1981 — During this month Gardiner receives final payment from H & B.

January 8, 1982 — Fedco issues certificate of substantial completion as of December 1, 1980. Certificate was backdated after architect determined from review of files that substantial completion had been achieved on or about December 1, 1980.

---

**4.** The president of Fedco testified that the final inspection, which he did not make personally, was made in the "February-March time frame."

February 16, 1982 — Letter from Fedco to H & B reflecting that H & B had not paid balance of fee for architectural services.

March 23, 1983 — H & B sues Fedco and Gardiner in the Circuit Court for Prince George's County.

August 26, 1983 — Circuit Court orders arbitration.

December 28, 1983 — H & B files with the American Arbitration Association (AAA) demands for arbitration against Fedco and Gardiner.

The parties have assumed that the "applicable statute of limitations," as the quoted words are used in the arbitration clauses, is Md.Code (1974, 1984 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article (CJ). It reads:

A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

With December 28, 1983, as the agreed date of commencement of the arbitrations, the issue is whether H & B's claims "accrued" before December 27, 1980. Conceptually those claims may sound in both contract and tort against Fedco and Gardiner respectively, unless, as Fedco argues, H & B has limited the claims it may assert in arbitration by the allegations of the circuit court complaint previously filed by it.

## I

In this part we shall consider whether limitations bar a claim by H & B in contract against Fedco. But, first, we consider a procedural point raised by the architect.

## A

Fedco points out that H & B's circuit court complaint filed on March 23, 1983, claimed against the architect in tort alone, and Fedco argues that no contract claim against it is involved in the arbitration. In its demand for arbitration, however, H & B described the nature of the dispute with Fedco as follows:

Alleged breach of contract and negligence in the design and construction of warehouse leased to District Moving and Storage Company, Inc. as claimed in Law Number 83–1287, Circuit Court for Prince George's County, Maryland with respect to which respondent has enjoined prosecution in Equity Number 83–0899, Circuit Court for Prince George's County, Maryland.

The H & B–Fedco contract submits to arbitration "[a]ll claims, disputes and other matters in question between the parties to this Agreement, arising out of, or relating to this Agreement or the breach thereof...." The arbitration clause incorporates the Construction Industry Arbitration Rules of the American Arbitration Association. Rule 7 (Jan. 1, 1981, ed.), "Initiation under an Arbitration Provision in a Contract," provides that the notice of arbitration "shall contain a statement setting forth the nature of the dispute...." *Id.* at 6. Rule 8, "Change of Claim or Counterclaim," provides:

After filing of the claim or counterclaim, if either party desires to make any new or different claim or counterclaim, same shall be made in writing and filed with the AAA.... However, after the arbitrator is appointed no new or different claim or counterclaim may be submitted without the arbitrator's consent. [*Id.* at 6–7.]

■■■ Although H & B's demand for arbitration describes the dispute as including an alleged breach of contract, the complaint in the civil action to which that demand also refers does not plead a contract claim against Fedco. The issue of whether a demand in this form limits the scope of an arbitration is an issue within the very broad submission of the arbitration clause and is for the arbitrator to decide. *See generally Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 468 A.2d 91 (1983). Further, even if the demand for arbitration were interpreted to exclude breach of contract, the AAA Construction Industry Rules make certain provisions for amendment. Application of those rules is for the arbitrator.

■■ Consequently, our only concern under *Bel Pre, supra,* is whether any H & B claim, including breach of contract, can survive the bar of limitations when H & B admittedly knew of leaks in the building more than three years before demanding arbitration.

### B

The contract between Fedco and H & B divides the basic services to be rendered by the architect into five phases: schematic design, design development, construction documents, bidding or negotiation, and construction phase-administration of the construction contract. Fedco's duties in the construction phase included endeavoring "to guard the Owner against defects and deficiencies in the Work of the Contractor" (¶ 1.1.14), and exercising authority "to reject Work which does not conform to the Contract Documents" (¶ 1.1.17). Paragraph 1.1.20 of the contract further provides:

> The Architect shall conduct inspections to determine the Dates of Substantial Completion and final completion, shall receive and review written guarantees and related documents assembled by the Contractor, and shall issue a final Certificate for Payment.

The inspection to determine final completion and the issuance of the final certificate of payment did not take place until after December 27, 1980.

H & B submits that limitations did not begin to run on any of its claims against the architect until Fedco had completed rendering all of the services which it had promised. Our cases have called this approach to a limitations issue the "continuation of events" theory. *See Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 500 A.2d 641 (1985) (continuation of events theory does not defer running of limitations on owner's claim asserting negligence in original glass installation against subcontractor which thereafter had been endeavoring to correct the defective work); *Waldman v. Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966) (medical malpractice; continuation of events discussed; discovery rule applied).

H & B rests its argument on the two Maryland decisions which may have applied the continuation of events theory, *Vincent v. Palmer*, 179 Md. 365, 19 A.2d 183 (1941) and *W.B. & A. Electric R.R. v. Moss*, 130 Md. 198, 100 A. 86 (1917). *Vincent* involved a Great Depression era contract under which a mechanical engineer obtained first call on the plaintiff's services by promising the plaintiff ten percent of profits. The engineer did not specify when the plaintiff's share of the profits would be paid. Suit was brought after the arrangement had continued for almost seven years. We held that limitations did not run "until an accounting is made or [plaintiff's] services are ended." 179 Md. at 375, 19 A.2d at 189. In *Moss* the contract, which was between principal and agent for the latter to obtain a lease for the former on certain premises, also failed to specify date of payment. The agent initially obtained the lease in his own name and a month later assigned it to the principal. The critical date three years prior to suit fell after the lease was obtained by the agent but before the assignment. Because there were conflicting inferences from the evidence, limita-

tions in that case was a question of fact and the action was remanded.

H & B emphasizes the following statement from *Moss:*
The general rule seems also settled that in the computation of the statutory period, in cases where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens. *Angell on Limitations,* sec. 120; *Wood on Limitations,* 325–330. [130 Md. at 204–05, 100 A. at 89.]

We have a number of reservations about the applicability of the holdings in *Vincent* and in *Moss* to H & B's claim here. Because the contracts for the rendering of services in those two cases were not specific as to when payment for services was due to be made, the opinions can be read to stand for no more than that limitations did not begin to run until payment was due. *See, e.g.,* 1 H. Wood, *A Treatise on the Limitation of Actions at Law & in Equity* § 120, at 673 (D. Moore 4th ed. 1916) ("Under an ordinary contract for services for a stated period, whether long or short, no time for payment being agreed upon, the right of action accrues immediately upon the completion of the term of service."). Nor is it at all clear that the continuation of events theory postpones the running of limitations against the party for whom the services were rendered on that party's claim that the services as rendered did not conform to the contract. On the other hand, a trial court in New York has held that an owner's malpractice action against an architect was not barred by limitations where the architect, after final payment had been made to the contractor, participated in efforts attempting to correct a leaking roof. The court analogized to New York's "continuous treatment" exception to time of accrual which had been applied in medical malpractice actions. *See County of Broome v. Vincent J. Smith, Inc.,* 78 Misc.2d 889, 358 N.Y.S.2d 998 (1974).

■ We need not resolve these questions in this case, however, because CJ § 5–108(b)–(e), the special statute of repose for claims against architects, professional engineers, and contractors, does not permit use of the continuation of events theory as H & B would have it applied here. For example, in its civil action H & B alleged malpractice by Fedco in the design of the building. Prior to December 27, 1980, H & B was on notice that a design defect might be causing the leaks. Absent the operation of the discovery rule or of a continuation of events theory, an owner's cause of action for improper design by architects accrues when the plans are finally approved. *See Comptroller of Virginia ex rel. Virginia Military Institute v. King,* 217 Va. 751, 759, 232 S.E.2d 895, 900 (1977). In this case the discovery rule likely postponed the start of limitations beyond the date of plan approval, but, under the trial court's findings, not to as late as December 27, 1980. By that date at the latest limitations had begun to run against H & B's accrued claims against Fedco by virtue of § 5–108.

■ In relevant part § 5–108 reads:

(b) A cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when ... injury to real ... property, resulting from the defective ... condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

(c) Upon accrual of a cause of action referred to in subsection[ ] ... (b), an action shall be filed within 3 years.

(d) This section does not apply if the defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred.

(e) A cause of action for an injury described in this section accrues when the injury or damage occurs.

The history of this provision elucidates its application.

The predecessor to present § 5–108 was enacted by Ch. 666 of the Acts of 1970.[5] In the year preceding this enactment *Steelworkers Holding Co. v. Menefee*, 255 Md. 440, 258 A.2d 177 (1969) had applied the discovery rule to determine accrual of a cause of action for general statute of limitations purposes in a malpractice action against an architect. That same year *Mattingly v. Hopkins*, 254 Md. 88, 253 A.2d 904 (1969) had held the discovery rule governed accrual of a malpractice action against a professional engineer. The discovery rule had earlier been applied in *Callahan v. Clemens*, 184 Md. 520, 41 A.2d 473 (1945) to the accrual of a cause of action by an adjoining property owner against a contractor who had allegedly negligently erected a wall. It was clear that one purpose of Ch. 666 was to set a time limit after which the discovery rule could not operate.

Chapter 666 was modified as part of the Code revision project when the Courts and Judicial Proceedings Article was enacted, effective January 1, 1974. From a prohibition, "[n]o action ... shall be brought," the language was changed to read in relevant part:

> Except as provided by this section, *no cause of action for damages accrues* ... when ... injury to real ... property resulting from the defective ... condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes avail-

---

5. As it appeared in Md.Code (1957, 1972 Repl.Vol.), Art. 57, § 20, § 1 of the enactment read:

> No action to recover damages for injury to property real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages incurred as a result of said injury or death, shall be brought more than twenty years after the said improvement was substantially completed. This limitation shall not apply to any action brought against the person who, at the time the injury was sustained, was in actual possession and control as owner, tenant, or otherwise of the said improvement. For purposes of this section, "substantially completed" shall mean when the entire improvement is first available for its intended use.

able for its intended use.  [Md.Code (1974), CJ § 5–108(a) (emphasis added).]

Present § 5–108(d) was subsection (b) in the 1974 enactment.  The 1974 changes also added as subsection (c) the language now found in (e) ("A cause of action for an injury described in this section accrues when the injury or damage occurs.").

The Revisor's Note explains the 1974 changes.

This section is new language derived from Article 57, § 20.  It is believed that this is an attempt to relieve builders, contractors, landlords, and realtors of the risk of latent defects in design, construction, or maintenance of an improvement to realty manifesting themselves more than 20 years after the improvement is put in use.  The section is drafted in the form of a statute of limitation, but, in reality, it grants immunity from suit in certain instances.  Literally construed, it would compel a plaintiff injured on the 364th day of the 19th year after completion to file his suit within one day after the injury occurred, a perverse result to say the least, which possibly violates equal protection.  Alternatively, the section might allow wrongful death suits to be commenced 18 years after they would be barred by the regular statute of limitations.

The section if conceived of as a grant of immunity, avoids these anomalies.  The normal statute of limitations will apply if an actionable injury occurs.

Subsection (c) is drafted so as to avoid affecting the period within which a wrongful death action may be brought.  [Md.Code (1974), CJ at 182.]

The Revisor's Note makes plain that § 5–108 was not intended to abrogate the discovery rule as it then applied to actions against architects, engineers, and contractors.  Inasmuch as the twenty year cutoff was intended to address the problem of latent defects, the statute anticipated that suits could be brought more than three years after legally recognized injury, which was unknown to the plaintiff, had occurred.  Prior to immunity arising after the twenty year

period, "[t]he normal statute of limitations will apply if an actionable injury occurs." Thus, the language of present subsection (e), equating accrual with "when the injury or damage occurs," means when the injury or damage is discovered.

Present subsections (b) and (c) were added by Ch. 698 of the Acts of 1979. Subsection (b) reduced the period before immunity to ten years for architects and professional engineers and Ch. 605 of the Acts of 1980 added contractors to that class. *See Whiting-Turner Contracting Co. v. Coupard*, 304 Md. 340, 499 A.2d 178 (1985).

The provisions of § 5–108 which are significant to H & B's claim are subsections (e) and (c). A cause of action by H & B for a defective condition of the building "accrue[d] when the injury or damage occur[red]," which means when the injury or damage was discovered. Upon accrual of that cause of action, suit "shall be filed within 3 years." § 5–108(c). The language of subsections (c) and (e) does not accommodate further postponing of the time for accrual of an H & B cause of action beyond the time of discovery and does not accommodate enlarging the three year limitations period following that accrual. Consequently, the continuation of events theory cannot apply to the claim against the architect.

It follows that the sole H & B cause of action against Fedco for breach of contract which remains viable in the face of the limitations defense is one accruing on or after December 27, 1980. The record indicates that Fedco's final inspection occurred after that date. H & B's circuit court complaint included an allegation of negligent inspection. If the arbitrator concludes that a contract claim against Fedco is procedurally permissible and finds that the final inspection did not conform to the contract, H & B would be entitled to proven damages for that breach.

## II

For the same reasons given in Part I B above, a cause of action in tort by H & B against Fedco would lie for any

harm suffered by H & B that was proximately caused by Fedco's breach of a legally imposed duty occurring on or after December 27, 1980.

III

■ Analysis of H & B's claims against Gardiner for breach of contract has been greatly simplified by *Antigua Condominium Association v. Melba Investors Atlantic, Inc.*, 307 Md. 700, 517 A.2d 75 (1986), which was decided after all but appellant's reply brief in the case now before us had been filed. At oral argument counsel for H & B submitted that *Antigua* resolved most of the issues in this case, and we agree.

The *Antigua* litigation included claims by the purchasers of units in a residential condominium against the developer, as seller. The developer raised a limitations defense to the claims of those purchasers who had taken deeds more than three years before the institution of suit seeking damages for defects, including water leaking into the building. The standard contract of sale utilized by the developer contained the developer's promise to make necessary repairs provided notice of the defect was given to the developer within one year following settlement under the contract. We held that an action for breach of that provision (the Repair Clause) accrued within the three year limitation period, saying:

We do not interpret the Repair Clause as simply a warranty of the condition of a unit or of the common elements as of the time of closing with a Unit Owner. Had Melba simply guaranteed the condition of the property as of the date of closing with a Unit Owner, any breach of that guarantee would necessarily occur at closing and, absent a special statute, the cause of action would accrue for limitations purposes when the breach was discovered. *See Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981). Here, however, Melba additionally promised to repair if notified timely. The breach of that covenant to repair does not occur at closing or necessarily when notice is given. Conceptually, the ways in which

one who has contracted to repair could breach that contract include repudiating the obligation before any notice is given, or, after being on notice of the defect, failing to undertake the repairs within a reasonable time, expressly refusing to repair, or, after undertaking to repair, abandoning the work before completion. [307 Md. at 715, 517 A.2d at 82–83.]

General Condition 13.2.2 of the H & B–Gardiner contract in relevant part reads:

If, within one year after the Date of Substantial Completion of the Work ... any of the Work is found to be defective or not in accordance with the Contract Documents, the Contractor shall correct it promptly after receipt of a written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. This obligation shall survive termination of the Contract. The Owner shall give such notice promptly after discovery of the condition.

Fedco, albeit retroactively, certified December 1, 1980, as the date of Substantial Completion. By letter dated February 23, 1981, H & B gave written notice to Gardiner of the leaking condition of the building. Under *Antigua*, H & B's claim for breach of Gardiner's promise to correct the work pursuant to ¶ 13.2.2 of the General Conditions is not barred by limitations. Indeed, Gardiner's obligation to perform was subject to the condition precedent of notice and would not even arise until notice had been given. There is evidence that Gardiner acknowledged its obligation under this covenant. H & B's contract claim for breach of General Condition 13.2.2 is not barred by limitations.[6]

---

6. H & B makes an alternative argument on which we need not opine in view of our holding concerning General Condition 13.2.2. The argument relies on an analysis applied in *President & Directors of Georgetown College v. Madden*, 505 F.Supp. 557 (D.Md.1980), *aff'd in part and appeal dismissed in part*, 660 F.2d 91 (4th Cir.1981) in a section of the District Court opinion other than that on which we relied in *Antigua*. *Georgetown College* is not a discovery rule case. H & B argues that its contract with Gardiner was entire and indivisible

## IV

All claims of H & B against Gardiner based on breach by Gardiner of a legally imposed duty which proximately caused harm to H & B as manifested by leaks in the building prior to December 27, 1980, are barred by limitations in view of H & B's knowledge of the leaks acquired more than three years before the demand for arbitration. H & B's dispute with Gardiner must, however, be arbitrated as to ¶ 13.2.2. If H & B is able to prove at that arbitration that Gardiner, on or after December 27, 1980, breached a legally imposed duty which proximately caused harm to H & B and if H & B can further prove that that harm is greater in degree than, or different from, harm which H & B otherwise would have suffered because of the breach by Gardiner, if any, of a legally imposed duty occurring prior to December 27, 1980, then H & B's claim against Gardiner in tort would not, to that extent, be barred by limitations.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM IN PART AND REVERSE IN PART THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND FURTHER TO REMAND THIS CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR THE ENTRY OF A JUDGMENT CONSISTENT WITH THIS OPINION. COSTS TO BE PAID TWENTY-FIVE PERCENT BY HILLIARD & BARTKO JOINT VENTURE, TWENTY-FIVE

---

in that Gardiner's promised performance was to deliver a completed structure, and that, under *Georgetown College,* limitations first begin to run on final acceptance by the owner and not when undiscovered defective work was done.

In its brief H & B describes its contract claim against Gardiner as one seeking damages because the building leaks. That is the basis of the damages claimed under ¶ 13.2.2 of the General Conditions. H & B has not argued that there is any difference in the relief allowable for a breach by Gardiner of ¶ 13.2.2 and that allowable for a breach by Gardiner of its promise to perform the work in the first instance.

PERCENT BY FEDCO SYSTEMS, INC., AND FIFTY PERCENT BY GARDINER & GARDINER, INC.