763 A.2d 1207

**Thomas J. CARVEN, et ux.**

v.

**Vivian M. HICKMAN, Personal Representative
of the Estate of Louis J. Hickman, et al.**

**No. 2241, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Dec. 22, 2000.

Harold Douglas Norton (Brown, Brown & Brown, P.A. on the brief), Bel Air, for appellants.

James W. Almand (Christopher A. Palmer and Ayres, Jenkins, Gordy & Almand, P.A. on the brief), Ocean City, for appellees.

Argued before SONNER, KRAUSER, and MARVIN H. SMITH (Retired, specially assigned), JJ.

KRAUSER, Judge.

The issue presented by this case is whether the statute of repose, Courts and Judicial Proceedings § 5–108 of the Maryland Code Annotated (1973, 1998 Repl.Vol.), bars a claim against an owner developer who, after allegedly removing the headstones from his family graveyard, sold it, as part of a residential lot, without notifying the purchasers of its existence or removing the graves or their occupants. The ultimate and unwitting purchasers of that lot were appellants, Thomas and Deborah Carven.

In 1986, appellants built their home on the lot in question, and in 1995 they discovered that they were not the only ones who occupied it. In approving the plans for appellants' home in accordance with the property's restrictive covenants, the owner developer, Louis J. Hickman, and his wife and alleged partner, Vivian M. Hickman,[1] had failed to mention the graveyard or that Mr. Hickman had left no headstone unturned in preparing their property for sale. In 1997, Mr. Hickman passed away.

On December 16, 1997, appellants filed suit in the Circuit Court for Worcester County against Vivian M. Hickman, individually and as personal representative of the estate of her deceased husband, Louis J. Hickman, appellees, for deceit, breach of covenant of special warranties, and negligence. In response, appellees filed an answer and later an amended answer and a motion for summary judgment. From the granting of that motion, appellants appeal.

## BACKGROUND

On February 29, 1944, Louis J. Hickman acquired the "Warrington Farm", a 200-acre farm near Bishopville, Maryland. From that raw parcel of farmland, Hickman and his wife and alleged partner, Vivian M. Hickman, developed a 200-acre residential subdivision with over 150 lots now known as Holiday Harbor. Pursuant to a development plan, the Hickmans dug canals, built roads, installed underground electric service, granted rights of way for utilities and roads, and subdivided the property through a series of plats to create lots that could be conveyed separately. Those plats were recorded among the land records of Worcester County.

Restrictive covenants were placed on the lots of the development by deed. One such covenant prohibited a "graveyard" from being "erected, permitted, maintained or operated" upon

---

1. In their complaint, appellants allege that Vivian M. Hickman was "a general partner of Louis J. Hickman" in the development of the land in question, an allegation denied by appellees in their answer to the complaint.

any portion of the subdivision. Another required that the Hickmans first approve the construction plans of a lot owner before he or she could proceed with construction. In 1964, appellants claim, Mr. Hickman "removed the tombstones, markers, and other surface evidence of the graveyard with the use of a bulldozer, while leaving the graves underground."

On June 30, 1964, Plat No. 2 was recorded among the land records of Worcester County. That plat created Lot No. 96, but gave no indication of the presence of a graveyard on that property. Moreover, the Hickmans, according to appellants, failed to advise the county of its existence when they sought county approval of their plat.

The Hickmans later conveyed Lot No. 96 to Preston L. Tubbs, Louis P. Tubbs, and Louise T. Lynch by deed dated August 25, 1975. They, in turn, conveyed it by deed dated June 11, 1984 to Edward J. Bryant and Betty B. Bryant, who thereafter conveyed it to their son-in-law and daughter, Thomas and Deborah Carven ("Carvens"), by deed dated April 2, 1986.

The Hickmans had had no contact with the Bryants or the Carvens before the Carvens acquired title to Lot No. 96. After acquiring title to that lot, however, the Carvens met with the Hickmans to obtain the Hickmans' approval of their home construction plans as they were required to do by the covenants. At that meeting, Mr. Hickman reviewed and approved the Carvens' plans. At no time, however, did either Hickman inform the Carvens of the existence of a graveyard on their lot. That same year, the Carvens began constructing their family residence. They did not discover the graveyard on their property during construction, but, nine years later, on January 11, 1995, they did.

On September 29, 1997, Mr. Hickman died. Several months, later, on December 16, 1997, the Carvens filed their complaint in the Circuit Court for Worcester County against appellees, alleging deceit, breach of covenant of special warranty, and negligence. In response, appellees filed an answer

and then later an amended answer and a motion for summary judgment.

On June 30, 1999, the circuit court granted appellees' motion for summary judgment as to the breach of covenant of special warranties claim on the ground that the special warranty in question did not extend to subsequent owners, but denied it as to the remaining claims, stating that § 5–108 (the statute of repose) did not apply to the conduct alleged in the complaint. Appellees filed a motion for reconsideration of that ruling. Upon reconsideration, the circuit court, in a written opinion dated September 27, 1999, granted summary judgment as to the remaining counts of the complaint on the ground that they were barred by the statute of repose. Appellants then noted this appeal.

## DISCUSSION

### I

Appellants contend that the trial court erred in granting appellees' motion for summary judgment on the ground that appellants' claims were time barred by the statute of repose. That statute, § 5–108, provides, in part:

(a) *Injury occurring more than 20 years later:*—Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

Citing that statute, the circuit court found that the creation of the subdivision and preparation of lots for sale constituted an "improvement to real property" and that "the injury [to appellant] accrued more than 20 years after the date the improvement first became available for its intended use," which, according to that court, was the date on which Plat No.

2 was recorded.  On that basis, it granted summary judgment in favor of appellees.

In evaluating appellants' contention that the trial court erred in so ruling, we observe that summary judgment is appropriate only when, after viewing the motion and response in favor of the non-moving party, there is no genuine issue of material fact, and the party in whose favor judgment is entered is entitled to judgment as a matter of law.  *Pittman v. Atlantic Realty Co.*, 127 Md.App. 255, 269, 732 A.2d 912, *rev'd on other grounds*, 359 Md. 513, 754 A.2d 1030 (2000); Md. Rule 2–501(e).  The standard of review we are to apply "is whether the trial court was legally correct."  *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990).  In making that determination, "we do not accord deference to the trial court's legal conclusions."  *Lopata v. Miller*, 122 Md.App. 76, 83, 712 A.2d 24, *cert. denied*, 351 Md. 286, 718 A.2d 234 (1998).

As the facts pertinent to the motion for summary judgment are not in dispute, we turn to the question of whether the circuit court was "legally correct" in applying § 5–108 to these facts.  In deciding that question, we shall consider the purpose and intent of the Legislature in enacting that statute.

"The cardinal rule of statutory construction is to effectuate and carry out legislative intent."  *Rose v. Fox Pool Corp.*, 335 Md. 351, 358, 643 A.2d 906 (1994).  Because every statute furthers some underlying purpose, we must construe a statute according to its general purposes and policies.  *Id.* at 358–59, 643 A.2d 906.  In interpreting a statute such as the one before us, we look first to the words of the statute, giving them their "natural and ordinary signification, bearing in mind the statutory aim and objective."  *Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483 (1992).  "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written."  *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204 (1994).

Even if the statute is clear and unambiguous, however, "we are not 'precluded from consulting legislative history as part of the process of determining the legislative purpose or goal' of the law." *Morris v. Prince George's County,* 319 Md. 597, 604, 573 A.2d 1346 (1990). Moreover, "the legislative history of a statute, including amendments that were considered and/or enacted as the statute passed through the Legislature, and the statute's relationship to earlier and subsequent legislation are 'external manifestations' or 'persuasive evidence' of legislative purpose that may be taken into consideration." *Rose,* 335 Md. at 360, 643 A.2d 906. We next address the question of what is a statute of repose and then what purpose does it serve?

Generally, a "statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time," which is "typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason." *First United Methodist Church of Hyattsville v. United States Gypsum Co.,* 882 F.2d 862, 866 (4th Cir.1989). It is a substantive grant of immunity derived from a legislative balance of economic considerations affecting the general public and the respective rights of potential plaintiffs and defendants. *Id.*

A statute of repose is different from a statute of limitations, which is "a procedural device that operates as a defense to limit the remedy available from an existing cause of action." *Id.* at 865. Unlike a statute of limitations, a statute of repose is not triggered by the discovery rule. *Id.* at 865–66. Nor is it tolled by a defendant's fraudulent concealment of the cause of a plaintiff's injury. *Id.* at 866. Instead, it "shelter[s] legislatively designated groups from property and personal injury actions after a period of time has elapsed ... and is unrelated to when an accident or discovery of damages occurs." *See* Susan C. Randall, Comment, *Due Process Challenge to Statutes of Repose,* 40 Sw.L.J. 997, 998 (1986).

The catalyst for enacting such statutes in many jurisdictions, including Maryland, was the dramatic expansion in the

liability of builders, contractors, architects, engineers, and developers resulting from three developments: 1) the elimination of the "privity of contract" doctrine [2] as a defense, *see Rose,* 335 Md. at 362, 643 A.2d 906; *Whiting–Turner Contracting Co. v. Coupard,* 304 Md. 340, 349, 499 A.2d 178 (1985); and *Randall, supra,* at 1000; 2) the declining acceptability of "the completed and excepted rule," [3] *see Randall, supra,* at 1000–01; and 3) the application of the "discovery rule" [4] to state statutes of limitations. *See Rose,* 335 Md. at 362, 643 A.2d 906; *Whiting–Turner,* 304 Md. at 349, 499 A.2d 178; and *Randall, supra,* at 1001. "Taken together these three legal developments meant that architects, engineers, contractors, and others involved in construction could be held liable indefinitely for property damage and personal injury caused by their work." *See* Randall, *supra,* at 1001. Thus, "[a]rchitects and engineers, particularly concerned by these developments, turned to state legislatures for protection from this expanded liability." *Rose,* 335 Md. at 362, 643 A.2d 906. The possibility that seemingly endless liability would deter such professionals from experimenting with new materials, designs, or procedures spurred the state legislatures into action. *See* Randall, *supra,* at 1000–02; Josephine Herring Hicks, *The Constitutionality of Statutes of Repose: Federalism Reigns,* 38 Vand. L.Rev. 627, 633 (1985); *Whiting–Turner,* 304 Md. at 354, 499 A.2d 178 (agreeing with the Supreme Court of Michigan that legislation was needed to " 'reduce the potential liability' " of professionals to " 'encourage experimentation' ") (quoting

---

**2.** This doctrine was "an early common law rule that denied recovery to third-party plaintiffs [who were not in privity of contract with the defendant]. Abolition of this rule meant that construction industry professionals and workers could be liable for negligence to a variety of potential plaintiffs." Randall, *supra,* at 1000.

**3.** "Under the completed and accepted rule, an owner's acceptance of a finished product terminated the liability of those involved in the construction of the product." Randall, *supra,* at 1000.

**4.** "[A]doption of the discovery rule as the criterion for triggering the running of the statute of limitation served to prolong potential liability" because it delayed the running of the statute of limitations until the date on which the injury was actually discovered. Randall, *supra,* at 1001.

*O'Brien v. Hazelet & Erdal*, 410 Mich. 1, 299 N.W.2d 336, 342 (1980)). In Maryland, the Legislature responded by enacting Ch. 666 of the 1970 Laws of Maryland, formally codified in Article 57, § 20 of the Maryland Code, the precursor to § 5–108.[5]

The Revisor's Note to § 5–108 indicates that the purpose of this statute was to impose a limit on the expansion of liability for professionals involved in making improvements to real property. It states:

> This section is new language derived from Art. 57, § 20. It is believed that this is an attempt to relieve builders, contractors, landlords, and realtors of the risk of latent defects in design, construction, or maintenance of an improvement to realty manifesting themselves more than 20 years after the improvement is first put in use. The section is drafted in the form of a statute of limitation, but, in reality, it grants immunity from suit in certain instances.

According to that note, therefore, the purpose of § 5–108 was to protect builders, contractors, realtors, and landlords from suits for latent defects in design, construction, or maintenance of an improvement to real property that are brought more than twenty years after the improvement is first put to use. In granting immunity from such suits after

---

5. The statute, as originally enacted, provided:

Actions for damages resulting from defective or unsafe real property improvements.

No action to recover damages for injury to property real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages incurred as a result of said injury or death, shall be brought more than twenty years after the said improvement was substantially completed. This limitation shall not apply to any action brought against the person who, at the time the injury was sustained, was in actual possession and control as owner, tenant, or otherwise of the said improvement. For purposes of this section, "substantially completed" shall mean when the entire improvement is first available for its intended use.

In 1973, Article 57, § 20 was repealed and CJ § 5–108(a) enacted. Subsequent amendments to § 5–108 added other subsections, but left untouched subsection (a), which is found in its current iteration. 1979 Md. Laws ch. 698; 1980 Md. Laws ch. 605; 1991 Md. Laws ch. 271.

twenty years has elapsed, the Legislature appeared to be striking a balance between encouraging innovation in the construction industry and ensuring public safety. One thing, however, is abundantly clear: the Legislature did not intend for § 5–108 to encompass a developer's desecration of a graveyard and his subsequent concealment of its existence to facilitate its sale as part of a residential lot.

The purpose and intent of the statute of repose was considered by the Court of Appeals in *Rose*, 335 Md. at 361–74, 643 A.2d 906. In that case, the principal issue before the Court was "whether § 5–108(a) applies to a cause of action brought against the manufacturer of a residential, in-ground swimming pool for injuries caused by an alleged defect in the pool's design." *Id.* at 354, 643 A.2d 906. The trial court held that it did and granted summary judgment in favor of the defendant manufacturer on the ground that § 5–108(a) barred the plaintiff's suit. *Id.* at 358, 643 A.2d 906. The Court of Appeals agreed with the trial court that the statute of repose applied to the facts of that case but nonetheless reversed the judgment of that court on the ground that "there [was] a genuine issue of material fact as to whether the plaintiff's injury occurred more than 20 years after the date the entire improvement first became available for its intended use." *Id.* at 354–55, 643 A.2d 906.

In reaching that conclusion, the Court of Appeals stated that "[t]he specific statutory language of § 5–108(a) precludes all actions which meet two requirements: (1) the plaintiff's injuries must have resulted from the alleged defective and unsafe condition of 'an improvement to real property'; and (2) 20 years must have passed since the 'entire improvement first bec[ame] available for its intended use.' " *Id.* at 360, 643 A.2d 906.

## II

The first requirement—that "the plaintiff's injuries must have resulted from the alleged defective and unsafe condition of 'an improvement to real property' "—has three components:

1) an improvement to real property, 2) a defective and unsafe condition of that improvement, and 3) injuries resulting from the defective and unsafe condition. Unfortunately, neither the language of the statute nor its legislative history provides much assistance in defining these three components. Indeed, as to the first component, the Court of Appeals observed that "Section 5–108 itself does not define 'improvement to real property' and there is no clear indication in the legislative history of the statute as to what the term was meant to encompass." *Id.* at 375, 643 A.2d 906.

In defining that term, the Court of Appeals then prescribed a "common sense approach" and adopted the Black's Law Dictionary definition of "an improvement to real property." *Id.* at 376, 643 A.2d 906. That text defines such an improvement as:

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset. Such expenditures are capitalized as part of the asset's cost.

BLACK'S LAW DICTIONARY 757 (6th ed.1990). The Court then set forth the factors that should be considered in determining whether something qualifies as an "improvement to real property." They are "the nature of the addition or betterment, its permanence and relationship to the land and its occupants, and its effect on the value and use of the property." *Rose,* 335 Md. at 376–77, 643 A.2d 906.

Although the decisions of our sister state courts are not binding on us, we find their definitions of this term to be helpful to our analysis. Other state courts have defined this term to mean "erection of a building; replacing old buildings

with new ones;  substantial repairs to a building necessary to preserve a building;  the making of substantial additions to or changes in existing buildings;  construction of sidewalks;  erection of fences;  and the preparation of land for building sites," *Noll by Noll v. Harrisburg Area YMCA,* 537 Pa. 274, 643 A.2d 81, 87 (1994) (internal citations omitted), as well as a circuit box and transformer that provided power to equipment in a computer room, *Travelers Ins. Co. v. Guardian Alarm Co. of Michigan,* 231 Mich.App. 473, 586 N.W.2d 760, 762 (1998), and the construction of a road.  *Milligan v. Tibbetts Engineering Corp.,* 391 Mass. 364, 461 N.E.2d 808, 809 (1984).

Equally helpful are the things that these courts have found not to be improvements to real property:  temporary gas meters installed in a newly constructed shopping mall, *Allentown Plaza Assoc. v. Suburban Propane Gas Corp.,* 43 Md. App. 337, 346, 405 A.2d 326 (1979), demolition work to gut a building to prepare it for renovations, *Brandt v. Hallwood Management Co.,* 560 N.W.2d 396, 399–400 (Minn.Ct.App. 1997),[6] "a survey [of land] and a plan dividing property into lots, at least where the plan is unrelated to any proposed construction or changes in the topography of the land," *Raffel v. Perley,* 14 Mass.App.Ct. 242, 437 N.E.2d 1082, 1083 (1982),[7]

---

6.   The Minnesota statute of repose provided, in part:

Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury.

MINN.STAT. § 541.051, subd. 1(a)(1996).

7.   The Massachusetts statute of repose provided:

Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property shall be commenced only within three years next after the cause of action accrues;  provided, however, that in no event shall such actions be commenced more than six years

and "the removal of an underground storage tank." *Pitsch v. ESE Michigan, Inc.,* 233 Mich.App. 578, 593 N.W.2d 565, 577 (1999), *appeal denied,* 459 Mich. 990, 595 N.W.2d 844 (1999).[8] The common denominator in all of these examples is that an improvement to real property is a tangible thing that is constructed, added, or developed as a permanent structure or part of a permanent structure on property. These examples are therefore consistent with the Black's Law Dictionary definition of "an improvement to real property," adopted by the Court of Appeals in *Rose,* which states that an improvement to real property "[g]enerally has reference to buildings, but may also include any permanent structure...." BLACK'S LAW DICTIONARY at 757.

In developing the farmland in question, appellees dug canals, built streets, and installed underground electrical service so that the property could be subdivided into individual lots for sale. While each of these items alone (canals, streets, and underground electrical service) may qualify as an improvement to real property, none of these improvements is relevant to our consideration of the applicability of the statute to the

---

after the performance or furnishing of such design, planning, construction or general administration.

MASS. GEN LAWS ch. 260, § 2B (1968)(amended 1973).

8. The Michigan statute of repose provided, in part:

No person may maintain any action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, more than 6 years after the time of occupancy of completed improvement, use, or acceptance of the improvement, or 1 year after the defect is discovered or should have been discovered, provided that the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer. However, no such action shall be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

MICH. COMP. LAWS § 600.5839(1)(1986).

instant case; appellants do not allege that they suffered any injury resulting from the defective and unsafe condition of any of those improvements. While appellees' efforts in preparing Warrington Farm for sale improved the condition of that property and adapted it for new purposes, these efforts were not challenged as the ones creating a defective and unsafe condition, causing appellants' injuries.

Instead, the change in the land at issue here was the removal of headstones from a graveyard to conceal its existence from potential buyers. This act hardly qualifies as an improvement. It did not alter the status of that property; it merely concealed it. It certainly did not constitute "a valuable addition to property ... or an amelioration in its condition, amounting to more than mere repair or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." *Id.* Nor did it constitute a "permanent structure" or part of one. *Id.* If we place it in the context of prevailing caselaw, it is more akin to the type of activity that other state courts have declined to define as improvements, such as demolition work inside a building to prepare it for renovations, see *Brandt,* 560 N.W.2d at 399–400, or "the removal of an underground storage tank." *Pitsch,* 593 N.W.2d at 577. But even these actions, which have been rejected by other courts as "improvements" to real property, were at least arguably steps taken in the direction of improving a property. The removal of headstones, without any intention of removing the graves themselves, does not even rise to that level, let alone constitute an improvement itself.

Even if we were to find that appellees' conduct amounted to an improvement to real property, we find that that improvement was not in a "defective and unsafe condition" as that term has been defined by caselaw and the statute of repose or its legislative history. The principal injury claimed by appellants is that "their realty and improvements" to that realty "are worthless" because of the existence of a graveyard on their property.

The legislative history cited above indicates that the Legislature intended a defective and unsafe condition to cover latent defects in parts that were used in the improvement, flaws in design that were relied upon in constructing the improvement, or defects in workmanship in the construction of the improvement. *See Hilliard & Bartko Joint Venture v. Fedco Systems, Inc.*, 309 Md. 147, 161, 522 A.2d 961 (1987) and Revisor's Note to § 5–108(a). For example, the defective and unsafe condition to real property found by the Court of Appeals in *Rose* was a design flaw in the construction of the swimming pool, which was alleged to have caused Rose's personal injuries.

Here, it is difficult for us to ascertain what the defective and unsafe condition is under the statute of repose because it is unclear what the improvement is. But whether we find that the alleged "improvement" at issue here was the removal of the headstones or, as the circuit court asserted, the creation of a subdivision and preparation of lots for sale, the defective and unsafe condition can only conceivably be the graves remaining underground on appellants' property. These graves do not amount to an *unsafe* or even defective condition of an improvement, as all graveyards by definition have graves. On the other hand, if by "defective" the parties are referring to the effect that an unmarked and unrecorded graveyard has on the title, we observe that there is no precedent for finding that a defective title constitutes "a defective and unsafe condition" under the statute of repose. Moreover, we note that as a condition of applicability, the statute of repose requires the improvement be both defective and unsafe. There is no evidence that the graveyard in question is unsafe, only unmarked.

We now turn to the question of whether the injury alleged by appellants is one that the statute of repose was intended to address. Appellants assert that the principal injury they sustained was a diminution in the value of their property because of the presence of the graveyard on their lot or the cost of disinterment. This injury does not fall within the purview of the statute of repose for two reasons. First, that

injury did not result "from the defective and unsafe condition" of an improvement to real property, at least not the improvement identified by the circuit court, namely, the creation of a subdivision and the preparation of lots for sale. As noted earlier, the presence of the graveyard on appellants' property may not have enhanced the value of their property but it did not constitute a "defective and unsafe condition." Consequently, there is no connection between the improvement identified by the circuit court and the injury claimed by appellant.

Second, a financial injury of the kind suffered by appellants is not covered by the statute of repose. Although no Maryland appellate court has yet addressed this issue, the Court of Appeals of Mississippi recently did. *Air Comfort Systems, Inc. v. Honeywell, Inc.*, 760 So.2d 43 (Miss.App.2000). In considering a statute of repose similar to our own,[9] that court held that a financial injury caused by correcting an alleged defect in a building, not because of its unsafe condition but because a subcontractor used an incorrect part, is not the type of injury contemplated by the statute of repose because it "is not damage to property or personal injury under the statute." *Id.* at 48. In arriving at this conclusion, the Mississippi court

---

**9.** The Mississippi statute of repose at issue provided:

No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the ... construction of an improvement to real property, ... against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof. This limitation shall apply to actions against persons, firms and corporations performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property for the State of Mississippi or any agency, department, institution or political subdivision thereof as well as for any private or nongovernmental entity....

Miss Code Ann. § 15–1–41 (1972) (amended 1995). While this statute of repose differs from Maryland's in that it specifically identifies the class of defendants covered, like the Maryland statute, it covers injuries to real or personal property arising out of a defect in an improvement to real property.

pointed out that what the plaintiff was really seeking there was contract damages arising out of a breach of contract, not out of an injury to person or property as contemplated by the Mississippi statute of repose. *Id.* at 47–48. The court explained:

> The obvious problem for [plaintiff] is that what it is seeking are contract damages for an alleged breach, not damages arising out of an injury to person or property. True, the contract concerned real property. Yet if the claim relating to construction of a building is solely for failure to place the contracted-for quality of shingles on a roof, or to use the correct brand of plumbing fixtures, or to meet the contract schedule for completion, that is a contract claim and not a personal injury or property damage claim.... However, if water damage inside the structure proximately resulted from using a lower quality shingles on a roof than was required under the contract, the statute of repose would be relevant to a claim for that property damage.

*Id.*

We find the reasoning of that court sound. We therefore conclude that a purely financial injury, such as that claimed by appellants, does not fall within the purview of the Maryland statute of repose. The diminution in the value of a residential property caused by the discovery of the presence of a cemetery on that property and the cost of disinterring the bodies of that graveyard are not the injury to personal or real property, or personal injury, contemplated by the Maryland statute of repose.

Because we find that none of the elements of the first requirement set forth in *Rose* for statute of repose coverage are satisfied, we need not consider the second requirement ("whether 20 years passed since the 'entire improvement first bec[ame] available for its intended use.' ").

## CONCLUSION

In sum, we find that the circuit court erred in granting summary judgment based on the statute of repose, be-

cause appellants' claims did not involve a personal injury or an injury to personal or real property resulting from a defective and unsafe condition of an improvement to real property. Accordingly, we shall reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**