*June Diane Duffy, as Personal Representative of the Estate of James F. Piper v. CBS Corporation, f/k/a Viacom, Inc., f/k/a Westinghouse Electric Corp.*, No. 41, September Term, 2017. Opinion by Greene, J.

**NEGLIGENCE – STATUTE OF REPOSE – CAUSE OF ACTION ARISES – EXPOSURE APPROACH TEST**

The Court of Appeals held that an injury related to asbestos exposure that underlies a cause of action for personal injury or wrongful death arises at the time of exposure. The Court held that the "exposure approach," as adopted by the Court in *John Crane Inc. v. Scribner,* 369 Md. 369, 383, 800 A.2d 727, 735 (2002), was applicable to determine if a party's injuries or cause of action arose prior to the enactment of the Courts and Judicial Proceedings Article § 5-108, originally enacted as Article 57, § 20.

**NEGLIGENCE – STATUTE OF REPOSE – CAUSE OF ACTION ARISES – PROSPECTIVE APPLICATION**

The Court of Appeals held that the Estate's causes of action were not barred by the statute of repose because the decedent's injuries or causes of action arose from his unknowing exposure to asbestos, between May 3, 1970 and June 28, 1970, a period of time before the statute of repose was enacted. Further, as a matter of law, the statute of repose does not apply if the injury or the "last exposure undisputedly was before" the effective date of the Courts and Judicial Proceedings Article, § 5-108, formerly Article 57, § 20.

IN THE COURT OF APPEALS

OF MARYLAND

No. 41

September Term, 2017

_____

JUNE DIANE DUFFY, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
JAMES F. PIPER

v.

CBS CORPORATION, F/K/A VIACOM, INC.,
F/K/A WESTINGHOUSE ELECTRIC CORP.

_____

Barbera, C.J.
Greene,
McDonald,
Watts,
Hotten,
Getty,
Raker, Irma S. (Senior Judge, Specially
Assigned),

JJ.

_____

Opinion by Greene, J.

_____

Filed: March 28, 2018

In this case we must decide whether the statute of repose, presently codified as Section 5-108 of the Courts and Judicial Proceedings Article of the Maryland Code (1973, 2013 Repl. Vol.) ("CJP § 5-108" or "statute of repose"), bars the causes of action brought by James F. Piper ("Mr. Piper"), now deceased. After Mr. Piper's death, and while the case was pending in the intermediate appellate court, the Register of Wills appointed Petitioner, June Diane Duffy ("Ms. Duffy" or "the Estate"), Personal Representative of Mr. Piper's Estate,[1] and she was substituted in place of the decedent as a party to the litigation.[2] Ms. Duffy pursues, on behalf of the Estate, Mr. Piper's causes of action for personal injury and wrongful death resulting from his undisputed and unknowing exposure to asbestos that last occurred days before the statute of repose was first enacted in 1970 as Article 57, § 20 in the Maryland Code (1957, 1968 Repl. Vol., 1970 Cum. Supp.). The General Assembly enacted the statute of repose to provide a temporal limitation to the discovery rule's[3] applicability to causes of action for injuries "arising" from improvements to real property. Mr. Piper's causes of action stem from his exposure to asbestos, which led to the

---

[1] The Office of the Register of Wills for Anne Arundel County opened Mr. Piper's Estate on June 17, 2016 and appointed Ms. Duffy as Personal Representative of his Estate, pursuant to Mr. Piper's will, on the same day. *See* Estate No. 89818.

[2] Pursuant to Md. Rule 2-241, a notice of substitution of party was filed on August 8, 2016.

[3] The common law discovery rule is a departure from the general rule that "limitations against a right or cause of action begin to run from the date of the alleged wrong and not from the time the wrong is discovered" and permits a plaintiff to bring suit when the plaintiff "ascertains, or through the exercise of reasonable care and diligence should have ascertained, the nature and cause of his [or her] injury." *Harig v. Johns-Manville Prods. Corp.*, 284 Md. 70, 76, 83, 394 A.2d 299, 303, 306 (1978).

development of mesothelioma, a latent disease.[4]  Due to the latent effects of asbestos exposure and, thus, the causes of action at issue, the penultimate question in the case before us is when do injuries from asbestos exposure "arise" for purposes of the statute of repose. The answer to that question resolves whether the statute of repose when it was first enacted, as 1970 Maryland Laws, Chapter 666 ("Ch. 666"), and originally codified as Art. 57, § 20, bars Petitioner's claim for injuries that arose prior to the enactment of the statute.  To guide us, we rely on the tenets of statutory construction to determine what the drafters meant by the term "arise" within the meaning of the statute of repose.

## Factual and Procedural Background

The undisputed facts are as follows.  Respondent, CBS Corporation, is a Delaware corporation.  It was formerly known as Viacom, Inc., a successor by merger to the CBS Corp. and also formerly known as Westinghouse Electric Corporation ("Westinghouse"). At the time of Mr. Piper's injuries, CBS Corp. was known as Westinghouse.   In March 1970, Westinghouse contracted with Potomac Electric Power Company ("Pepco") to manufacture, supply, and deliver the components needed to build a Steam Turbine Generator ("Unit 1") at Pepco's Morgantown Generating Station ("Morgantown").

---

[4] Mesothelioma is "a type of cancer that occurs in the thin layer of tissue that covers the majority of [the body's] internal organs (mesothelium).  Mesothelioma is an aggressive and deadly form of cancer."  https://www.mayoclinic.org/diseases-conditions/mesothelioma/symptoms-causes/syc-20375022 [https://perma.cc/EXG8-R3TN].  This rare form of cancer mostly affects people who have worked in environments where they inhaled asbestos. *See John Crane, Inc. v. Puller*, 169 Md. App. 1, 14, 899 A.2d 879, 903 (2006), *cert. denied*, 394 Md. 479, 906 A.2d 943 (2006).

2

Westinghouse built the major components of the turbine offsite and constructed the turbine onsite at Morgantown. Included in the turbine specifications were insulating materials that contained asbestos. Walter E. Campbell Company ("WECCO") entered into a subcontract with Westinghouse to supply and install the insulating materials that Westinghouse specified for construction of the turbine generator. Westinghouse provided WECCO with the "Process Specification" for the "Application of Asbestos Compound by Spraying." These detailed instructions set forth the placement and method for applying insulation to the inside surfaces of the steam turbine enclosures.

Mr. Piper worked as a steamfitter at Morgantown. During the construction of the Unit 1 turbine, Mr. Piper worked on the steam piping that connected the Unit 1 turbine to another turbine. In his complaint, Mr. Piper alleged that at that time he was unknowingly exposed to asbestos as a result of WECCO's installation of the insulating material that contained asbestos. According to WECCO's payroll records, the insulation was installed between May 3, 1970 and June 28, 1970, which made June 28, 1970 the last possible day of Mr. Piper's undisputed exposure to the asbestos containing insulation.

Mr. Piper was diagnosed with mesothelioma on or about December 26, 2013. On March 26, 2014, he filed suit in the Circuit Court for Baltimore City against thirty-three defendants, including Westinghouse.[5] His four-count complaint against the various

---

[5] The named defendants, provided here without change, were: (1) 3M Company, f/k/a Minnesota Mining & Mfg. Co., n/k/a 3-M Corporation; (2) AC & R Insulation Co., Inc.; (3) A.O. Smith Corporation; (4) Avco Corporation (for its Spencer-Lycoming Division); (5) Baltimore Aircoil Company, Inc.; (6) Burnham Corporation; (7) Carrier Corporation; (8) CBS; (9) Certainteed Corporation, (and as Successor in Interest to Gustin Bacon);

(continued . . .)

3

defendants alleged strict liability, breach of warranty, negligence, and "aiding and abetting and conspiracy," which stemmed from his work as a plumber and steamfitter from 1948 to 1990. Specifically, Mr. Piper alleged that in connection with his employment, he used, worked with, or was exposed to asbestos products that were manufactured, supplied, and/or installed by the defendants. His complaint further alleged that some of the defendants failed to warn users that asbestos products contained "harmful, deleterious, carcinogenic and inherently dangerous asbestos dust and fibers which unreasonably endangered the life and health of persons using, working with or working around the asbestos products," and failed to protect users against these dangers.

At the close of discovery on January 9, 2015, Westinghouse filed a motion for summary judgment, which Mr. Piper opposed. On March 3, 2015, the Circuit Court held a hearing on the open motions. Westinghouse argued that Mr. Piper's causes of action against the corporation were barred by CJP § 5-108. Specifically, counsel for

_____

(. . . continued)

(10) C.J. Coakley Co., Inc.; (11) Cleaver-Brooks, Inc. (a Division of Aqua-Chem inc.); (12) Crane Company, Inc. (and as Successor to Pacific Steel Boiler); (13) Crown Cork & Seal Company, Inc. Successor in Interest to Mundet Cork Corp.; (14) Federated Development, LLC (as Successor to Pacific Steel Boiler); (15) Georgia-Pacific, LLC f/k/a Georgia Pacific; (16) Hampshire Industries, Inc. f/k/a John J. Hampshire, Co., Inc.; (17) Ingersoll-Rand Company; (18) Kaiser Gypsum Company, Inc.; (19) Krafft-Murphy Company (and as [S]uccessor to National Asbestos Co.); (20) MCIC, Incorporated, f/k/a McCormick Asbestos Co.; (21) Metropolitan Life Insurance, Co.; (22) Noland Company; (23) Oakfabco, Inc., f/k/a Kewanee Boiler Corporation; (24) Ric-Wil, Inc.; (25) Sid Harvey Industries, Inc.; (26) SPX Cooling Technologies, Inc., f/k/a Marley Cooling Tower; (27) Superior Boiler Works, Inc.; (28) Thos. Somerville Co.; (29) Trane U.S., Inc., as Successor to and f/k/a American Standard Companies, Inc.; (30) Union Carbide Corporation; (31) Uniroyal, Inc.; (32) The Walter E. Campbell Company, Inc.; and (33) Weil-McLain, Inc.

4

Westinghouse emphasized that the facts in the instant case were no different than the facts of *Burns v. Betchel Corp.*, 212 Md. App. 237, 66 A.3d 1187 (2013), where the trial court granted summary judgment in favor of a similarly situated defendant who successfully asserted that the statute of repose barred the plaintiff's claims in that case.[6] Westinghouse also argued that construing CJP § 5-108 as an applicable bar to Mr. Piper's claims would not infringe on any rights he possessed in 1970. Westinghouse contended that Mr. Piper could not have successfully brought a claim against the corporation at the time of his exposure because the exposure, at that time, had not manifested into a cognizable injury.

In contrast, Mr. Piper maintained that his injury arose at the time of his asbestos exposure around June 28, 1970. He asserted that *John Crane, Inc. v. Scribner*, 369 Md. 369, 800 A.2d 700 (2002), was applicable precedent, and that the reasoning in that case confirmed that his cause of action "arose" on the date of his exposure to asbestos. Specifically, counsel for Mr. Piper argued that the *Scribner* analysis was directly applicable to the facts of this case because in *Scribner*, the Court of Appeals determined that in an

---

[6] The facts in *Burns* were somewhat similar to the facts in Mr. Piper's case because in both cases the causes of action stemmed from alleged asbestos exposure that occurred during the construction of improvements to real property. *See Burns v. Bechtel Corp.*, 212 Md. App. 237, 239, 66 A.3d 1187, 1188 (2013). The critical difference in *Burns*, however, is that the Bechtel Corporation did not use the effective date of the statute of repose to support its assertion that the statute applied, thereby barring Burns's claims. *See id.* at 244, 66 A.3d at 1191. Rather, Bechtel Corp. asserted that it was not in actual possession and control of the property as "owner, tenant, or otherwise" when Mr. Burns's exposure occurred or when his injury was discovered, rendering the exception contained in CJP § 5–108(d)(2)(i) inapplicable. *See id.* at 246, 66 A.3d at 1193; *see also* CJP § 5-108(d)(2)(i) ("This section does not apply if: (i) the defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred[.]"). The trial court agreed, and the intermediate appellate court affirmed. *Id.*

asbestos-exposure related claim, a cause of action "arises" upon exposure to asbestos. Additionally, Mr. Piper's counsel contended that if the exposure predated the enactment of the statutory cap under § 11-108 of the Courts and Judicial Proceedings Article of the Maryland Code (1973, 2015 Repl. Vol.) ("CJP § 11-108"), then the statute could not retroactively apply to an injury or cause of action that "arose" prior to the statute's enactment. According to Mr. Piper, the same was true here, such that the statute of repose could not apply retroactively when his injury, and, thus, his causes of action "arose" prior to enactment of the statute. Additionally, Mr. Piper relied on Section 2 of Ch. 666, which states that the statute does not apply to "actions arising on or before June 30, 1970," to advance his argument that the statute of repose does not bar his claims.

Westinghouse, in response, contended that this Court's ruling in *Scribner* was a narrow holding that applied only to the statutory cap on noneconomic damages. Alternatively, counsel for Mr. Piper asserted that subsection (d)(2)(ii) of § 5-108 excluded Westinghouse on the basis that Westinghouse was a manufacturer[7] for purposes of the statute. Westinghouse responded that it was not a manufacturer of an asbestos-containing product for purposes of subsection (d)(2)(ii) of § 5-108, and, therefore, the exception did not apply.

At the close of the hearing, the Circuit Court granted Westinghouse's motion for summary judgment and entered an Order on May 14, 2015. Mr. Piper noted a timely appeal

---

[7] Because of our interpretation of the statute of repose's applicability in this case, the issue of whether Westinghouse was a manufacturer at the time of Mr. Piper's alleged exposure is moot.

to the Court of Special Appeals. Pending the appeal, Mr. Piper passed away on June 2, 2016, and Ms. Duffy was appointed Personal Representative of Mr. Piper's Estate on June 17, 2016.

On May 31, 2017, in a reported opinion, the Court of Special Appeals affirmed the Circuit Court's ruling. *Duffy v. CBS Corp.*, 232 Md. App. 602, 161 A.3d 1, *cert. granted*, 456 Md. 53, 170 A.3d 290 (2017). The intermediate appellate court first considered the plain meaning of the language of CJP § 5-108(a). *Id.* at 613, 161 A.3d at 7. By characterizing Mr. Piper's injury as the mesothelioma *diagnosis*, the Court of Special Appeals concluded that Mr. Piper's cause of action did not "arise" or "accrue" until 2013. The intermediate appellate court reasoned that the diagnosis of mesothelioma was outside of the twenty-year limitations period set forth in the statute of repose beginning with the operation of the turbine. *Id.* at 615, 161 A.3d at 8. That court, therefore, concluded that the plain language of CJP § 5-108 barred Mr. Piper's claims. *Id.* at 614, 161 A.3d at 8.

Next, the Court of Special Appeals considered Mr. Piper's argument that the uncodified Section 2 of Ch. 666 demonstrated that the statute did not apply to "actions arising on or before June 30, 1970." *Id.* at 616, 161 A.3d at 9. The purpose of CJP § 5-108, according to the intermediate appellate court, was to "set a time limit after which the discovery rule could not operate[.]" *Id.* at 620, 161 A.3d at 11 (quoting *Hillard & Bartko Joint Venture v. Fedco Sys., Inc.,* 309 Md. 147, 160, 522 A.2d 961, 968 (1987)). With that purpose in mind, the intermediate appellate court concluded that the word "accruing," as

used in the "purpose paragraph"[8] of Ch. 666, and the word "arising," as used in Section 2 of Ch. 666, must be construed to have the same meaning. *Id.* The Court of Special Appeals concluded that interpreting the words "arise" and "accrue" as indistinguishable terms would avoid any ambiguity or conflict between the statute's purpose and Section 2 of the statute. *Id.* The Court of Special Appeals, however, did not reach the issues of whether Section 2 of Ch. 666 carried the force of law due to the General Assembly not having codified that section, whether *Scribner's* reasoning was applicable to the statute of repose, or whether the manufacturer exception contained in CJP § 5-108(d)(2)(ii) applied to Westinghouse. *Id.* at 623–24, 161 A.3d at 13.

Ms. Duffy petitioned this court for *certiorari*, which we granted. *Duffy v. CBS Corp.*, 456 Md. 53, 170 A.3d 290 (2017). Ms. Duffy posed three questions for our review.[9]

---

[8] The purpose paragraph is "part of the title that describes in constitutionally acceptable details what the bill does" and "contain[s] a summary by categories of the changes proposed." Department of Legislative Services, Legislative Drafting Manual 2017, at 39 (2016), *available at* http://dls.maryland.gov/pubs/prod/LegisBillDrafting/Drafting-Manual.pdf. [https://perma.cc/KR3G-6QEM]. *See also* Black's Law Dictionary (7th ed. 1999), at 1250, which defines "purpose clause" as "[a]n introductory clause to a statute explaining its background and stating the reasons for its enactment."

[9] As presented in Ms. Duffy's petition, we granted *certiorari* with respect to the following questions:

> (1) "Did the Court of Special Appeals err in holding that the term 'arising' used in Section 2 of the original statute of repose actually means 'accruing' in contravention of this Court's holding in *John Crane, Inc. v. Scribner?*";
>
> (2) "Did the Court of Special Appeals err in holding that Westinghouse had a constitutionally vested right to repose prior to the effective date of the 1991 amendment to the statute which explicitly exempted manufacturers that caused asbestos injuries or death from the scope of repose?"; and

(continued . . .)

8

Because we answer the first question in the affirmative and hold that the statute of repose does not apply to this case, we do not address the remaining questions.

**Standard of Review**

This appeal concerns the Circuit Court's grant of summary judgment. When we review a grant of summary judgment we first determine whether there is a genuine dispute of material fact. *Koste v. Town of Oxford*, 431 Md. 14, 24–25, 63 A.3d 582, 589 (2013). If there is no genuine dispute of material fact, then we review the grant of summary judgment *de novo* to determine if the hearing judge's legal conclusions were correct. *Id*. at 25, 63 A.3d at 589. Westinghouse and Ms. Duffy agree that the last possible day Mr. Piper could have been exposed to asbestos was June 28, 1970. The parties' contentions rest solely on the legal question of the applicability of CJP § 5-108 to Mr. Piper's causes of action. Accordingly, we review the trial court's decision for legal correctness. *See id*.

**Discussion**

Our determination of whether "the Court of Special Appeals err[ed] in holding that the term 'arising' [as] used in Section 2 of the original statute of repose actually means 'accruing' in contravention of this Court's holding in *John Crane, Inc. v. Scribner*" requires resolution of two issues. First, in Part I, we determine whether the statute of repose applies as a bar to recovery for the injuries that Mr. Piper suffered. Specifically, we determine whether the statute is ambiguous as it relates to when an injury and a cause of action "arise"

---

(. . . continued)

(3) "As applied, does the Court of Special Appeals' decision violate Mr. Piper's constitutional right to access the courts?"

9

within the meaning of the statute of repose. Second, in Part II, to settle any confusion created by the intermediate appellate court's interpretation of the statute, we take this opportunity to clarify when an asbestos related cause of action "arises" and "accrues". Specifically, we consider the applicability of the discovery rule in relation to the manifestation of a latent disease.

If a statute's language is clear and unambiguous, the Court ordinarily looks no further than the statute itself. *See Watts v. State*, _ Md. _, _ A.3d _ (2018); *see also Koste*, 431 Md. at 25–26, 63 A.3d at 589. If the language of the statute is clear and remains consistent with the overall purpose of the statute, then we need not conduct any further analysis. *See Rose v. Fox Pool Corp.*, 335 Md. 351, 359, 643 A.2d. 906, 910 (1994) (considering the legislative history of § 5-108 to hold that the statute was applicable to a cause of action concerning an injury that arose from a latent defect in the construction of a swimming pool).

I.

*A Brief History of CJP § 5-108*

We had occasion to discuss CJP § 5-108's legislative history in *Rose*, a case concerning § 5-108's applicability to a suit for injuries that resulted from a latent defect in the construction of an in-ground swimming pool. 335 Md. at 370–71, 643 A.2d at 915 (1994). After several attempts in the 1967, 1968, and 1969 legislative sessions, the General Assembly enacted Art. 57, § 20 in 1970 to provide repose to certain classes of defendants against causes of action brought by plaintiffs who had sustained injuries involving improvements to real property. *Id*. at 365, 643 A.2d at 912–13. Art. 57, § 20 provided:

10

No action to recover damages for injury to property real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages incurred as a result of said injury or death, shall be brought more than twenty years after the said improvement was substantially completed. This limitation shall not apply to any action brought against the person who, at the time the injury was sustained, was in actual possession and control as owner, tenant, or otherwise of the said improvement. For purposes of this section, "substantially completed" shall mean when the entire improvement is first available for its intended use.

Four years later, however, the General Assembly amended Article 57, § 20, as part of the larger Code revision. The language was changed in CJP § 5-108(a) from "[n]o action . . . shall be brought" in Art. 57, § 20, to "[e]xcept as provided by this section, no cause of action for damages accrues . . . ." The revision also added subsection (c), which is now subsection (e) in the presently codified version. *See Rose*, 335 Md. at 366, 643 A.2d at 913. This addition provided a description of when a cause of action for wrongful death accrued under the statute.[10] The 1974 revised statute became CJP § 5-108:

---

[10] The Revisor's Note accompanying the revision of Art. 57, § 20 to CJP § 5-108 in 1974 explained the changes:

This section is new language derived from Article 57, § 20. It is believed that this is an attempt to relieve builders, contractors, landlords, and realtors of the risk of latent defects in design, construction, or maintenance of an improvement to realty manifesting themselves more than 20 years after the improvement is put in use. The section is drafted in the form of a statute of limitation, but, in reality, it grants immunity from suit in certain instances. Literally construed, it would compel a plaintiff injured on the 364th day of the 19th year after completion to file his suit within one day after the injury occurred, a perverse result to say the least, which possibly violates equal protection. Alternatively, the section might allow wrongful death suits to be commenced 18 years after they would be barred by the regular statute of limitations.

11

(a) *Injury resulting from improvement to realty*. — Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

(b) *Exception*. — This section does not apply if the defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred.

(c) *When action accrues*. — A cause of action for an injury described in this section accrues when the injury or damage occurs.

In 1979, the General Assembly added what is currently subsection (b), and amended the section a year later. *Id*. at 366, 643 A.2d at 913.[11] The General Assembly subsequently amended the statute in 1991 in response to the multitude of asbestos-related cases being brought throughout the state, which we discuss in more detail later in this opinion. *Id*. at 368–70, 643 A.2d at 914–15.[12]

---

The section if conceived of as a grant of immunity, avoids these anomalies. The normal statute of limitations will apply if an actionable injury occurs.

Subsection (c) is drafted so as to avoid affecting the period within which a wrongful death action may be brought.

[11] With the 1979 amendment, what was previously subsection (b) became subsection (c), and what was previously subsection (c) became subsection (d).

[12] The 1991 amendment added what is now subsection (d)(2). Since 1991, there have been no changes to CJP § 5-108, which in relevant part, provides:

(a) *Injury occurring more than 20 years later.* — Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death,

(continued . . .)

12

*Parties' Contentions*

The parties agree that the language of the statute of repose is clear and unambiguous. They rely, however, on different versions of the statute to advance their arguments. Westinghouse relies on the language in the presently codified version of CJP § 5-108. Specifically, Westinghouse asserts that pursuant to subsection (a) of CJP § 5-108, the Estate's claims are barred and its causes of action do not comport with any of the exceptions

---

(. . . continued)

personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

(b) *Action against architect, professional engineer, or contractor.* — Except as provided by this section, a cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

\* \* \*

[(d)](2) This section does not apply if:
    (i) The defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred;
    (ii) In a cause of action against a manufacturer or supplier for damages for personal injury or death caused by asbestos or a product that contains asbestos, the injury or death results from exposure to asbestos dust or fibers which are shed or emitted prior to or in the course of the affixation, application, or installation of the asbestos or the product that contains asbestos to an improvement to real property;
    (iii) In other causes of action for damages for personal injury or death caused by asbestos or a product that contains asbestos, the defendant is a manufacturer of a product that contains asbestos[.]

13

delineated in the statute. Westinghouse further argues that in light of the defined exceptions under subsection § 5-108(d)(2), the "*no cause of action*" language of subsection (a) should be interpreted as a blanket prohibition against all other suits that do not satisfy the exceptions.

The Estate, in contrast, relies on the language of Ch. 666, the session law that generated the initial statute of repose, Art. 57, § 20. In doing so, it contends that the Estate's causes of action "fall outside the temporal scope of the statute of repose" because the last possible day that Mr. Piper's undisputed asbestos exposure occurred was June 28, 1970, and Section 2 of Ch. 666 limits its applicability to injuries "arising" after June 30, 1970.

*Statutory Construction of Art. 57, § 20*

When originally enacted in 1970, the statute of repose provided:

> No action to recover damages for injury to property real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages incurred as a result of said injury or death, shall be brought more than twenty years after the said improvement was substantially completed. This limitation shall not apply to any action brought against the person who, at the time the injury was sustained, was in actual possession and control as owner, tenant, or otherwise of the said improvement. For purposes of this section, "substantially completed" shall mean when the entire improvement is first available for its intended use.

Art. 57, § 20. The plain language of the statute of repose provided that the statute will bar an action for injury or death "arising out of" the defective and unsafe condition of an improvement to real property twenty years after substantial completion of the improvement. Webster's Third New International Dictionary of the English Language (1961) defines the word "arise" as "to originate from a specified source . . . to come into

14

being . . . to become operative esp. in such a way as to attract attention . . . to appear above the horizon . . . to come about: come up: take place." The plain meaning of the word "arise" suggests that the statute of repose would apply to causes of actions for injuries that *originated* or *came into being* as a result of a defective and unsafe condition of an improvement to real property.[13]

*The "Exposure Approach"*

Section 2 of Ch. 666 plainly expressed that the statute did not apply retroactively to injuries when it provided that the act "shall not apply to any cause of action arising on or before June 30, 1970." In *Scribner*, we adopted the "exposure approach" for determining when a cause of action arises in the context of actions to recover damages for injuries related to asbestos exposure. 369 Md. at 394, 800 A.2d at 742. In that case we determined when a cause of action related to asbestos exposure arises for purposes of the statutory cap on noneconomic damages related to personal injury or wrongful death. *Id. Scribner* concerned actions grounded in wrongful death and survival that stemmed from exposure to products containing asbestos, where the decedent's last day of exposure occurred sometime in 1978. *Id*. CJP § 11-108, the statutory cap on noneconomic damages, went into effect on July 1, 1986. After the jury awarded the plaintiff damages in excess of $5,000,000, the defendants appealed, contending, in part, that the statutory cap applied to limit the award for noneconomic damages. *Id*. at 374, 800 A.2d at 730.

---

[13] As we will further discuss in Part II of this Opinion, for a cause of action to arise, the plaintiff need not know of his or her injury, but for a cause of action to accrue, the plaintiff must know, or reasonably should know, of his or her injury.

15

After considering three possible approaches for determining when a cause of action arises, this Court rested on the "exposure approach," which requires a trial court to look at the plaintiff's last day of exposure to the asbestos-containing product. *Id*. at 394, 800 A.2d at 742. Recognizing the drawbacks to each approach, this Court concluded that the "exposure approach" was the most appropriate in asbestos-exposure cases. *Id*. at 391–93, 800 A.2d at 740–41. Starting from the premise that "[i]f there is no injury, there is no cause of action[,]" the Court recognized that "[w]hether the injury sued upon is cancer or asbestosis, the plaintiff must, at the outset, establish that he or she has that disease[.]" *Id*. at 391–92, 800 A.2d at 740. The issue for the trial court, then, is to resolve "when that injury came into existence" for the purpose of determining whether the injury occurred before or after the effective date of CJP § 11-108. *Id*. at 392, 800 A.2d at 740.

We apply *Scribner's* "exposure approach" with equal force to the facts of the present case. Accordingly, we hold that when determining whether a plaintiff's injury relating to asbestos exposure arose prior to the effective date of the statute of repose, the date of the plaintiff's last exposure to asbestos-containing products applies. *See Scribner*, 369 Md. at 394, 800 A.2d at 742. The insidious nature of asbestos-related diseases and the purpose of the statute of repose bolster our conclusion to apply the "exposure approach."

In light of our application of the "exposure approach," we turn now to the effective date of the statute. Statutes of repose are defendant-focused statutes that insulate defendants from liability after a specified date. *Rose*, 335 Md. at 362–63, 643 A.2d at 911–12. When considering the purpose of statutes of repose, and Sections 2 and 3 of Art. 57 § 20, it is clear that the General Assembly did not intend to retroactively insulate from

16

liability defendants for injuries that they had already caused prior to the enactment of the statute. *See* Ch. 666, Section 2.

In *Slate v. Zitomer*, we explained that there is a "general presumption [] that all statutes . . . are intended to operate prospectively and the presumption is found to have been rebutted only if there are *clear expressions in the statute* to the contrary." 275 Md. 534, 541, 341 A.2d 789, 793 (1975) (emphasis added) (quoting *State Farm v. Hearn*, 242 Md. 575, 582, 219 A.2d 820, 824 (1966) (internal quotation marks omitted)). "This rule of construction is particularly applicable where the statute adversely affects substantive rights, rather than only altering [the] procedural machinery." *Id.* at 541, 341 A.2d at 794 (*State Farm v. Hearn*, 242 Md. 575, 582, 219 A.2d 820, 824 (1966) (internal quotation marks omitted)). A statute of repose operates to protect substantive rights of the defendant by limiting a defendant's liability after a prescribed date. *See Anderson v. United States*, 427 Md. 99, 120, 46 A.3d 426, 439 (2012).

Westinghouse argued that the statute of repose applied to bar Mr. Piper's causes of action because his causes of action "accrued"[14] in 2013, well after the effective date of the statute. We disagree with the conclusion that the statute of repose applies under the circumstances here. Before the statute went into effect, Westinghouse had already executed the contract for the installation of the asbestos-containing insulation, and Mr. Piper indisputably had already inhaled the asbestos fibers contained in the insulation

---

[14] As we will further discuss in Part II of this Opinion, the word "accrue" refers to "when a plaintiff in fact knows or reasonably should know of the wrong." *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 75, 904 A.2d 511, 521 (2006) (quoting *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 334, 635 A.2d 394, 399 (1994)).

17

materials installed by WECCO. The last possible day of Mr. Piper's exposure to asbestos-containing products occurred no later than June 28, 1970, and it was at that point when his injury and causes of action arose. *See* Ch. 666, Section 3 ("This Act shall take effect July 1, 1970."). By the time of the effective date of the statute of repose, Mr. Piper had already suffered an injury. *See Scribner*, 369 Md. at 394, 800 A.2d at 742. Because the statute went into effect after Mr. Piper's injury arose, the statute could not conceivably bar his causes of action for strict liability, negligence, breach of contract, and "aiding and abetting and conspiracy."

It is the date of Mr. Piper's injury—not the date of discovery of his cause of action—that guides our analysis because "[i]f there is no injury, there is no cause of action." *Scribner*, 369 Md. at 391–92, 800 A.2d at 740. Mr. Piper's diagnosis of mesothelioma in 2013 merely put him on notice that he had suffered an injury on a prior date and, therefore, may have causes of action that came into being as a result of his injury. It follows that if Mr. Piper had not been injured on or before June 28, 1970, then he would not have causes of action that arose in 1970, and, therefore, would have no viable causes of action in 2013. *See id.* at 392, 800 A.2d at 740. To be sure, if Mr. Piper had not been injured when alleged, there would have been no latent disease to discover in 2013. *Id.* at 390, 800 A.2d at 739. We, therefore, hold that the statute of repose does not apply to bar Mr. Piper's causes of action.

## II.

We turn now to the opinion of the Court of Special Appeals. We acknowledge that the Court of Special Appeals arrived at a different result than the one we reach now. The

18

Court of Special Appeals treated Mr. Piper's diagnosis of mesothelioma as his injury, rather than treating his exposure to asbestos as his injury. *See Duffy*, 232 Md. App. at 614–15, 161 A.3d at 8. The Court of Special Appeals primarily examined Ch. 666's stated purpose to interpret the plain language of the statute. As we will discuss, the intermediate appellate court's reasoning falters in several respects.

Operating from the premise that Mr. Piper's injury was his diagnosis of mesothelioma, the intermediate appellate court concluded that the statute of repose applied at the moment that Mr. Piper received his diagnosis. *Id.* It concluded from the plain language of CJP § 5-108 that Mr. Piper's causes of action "did not accrue within 20 years" of the time in which Respondent placed the turbine into operation. *Id.* Accordingly, the intermediate appellate court concluded that CJP § 5-108 barred Mr. Piper's action. *Id.*

Next, the Court of Special Appeals addressed Mr. Piper's contention that his "injury" was exposure to asbestos and, thus, arose on the date of his last exposure, as explained in *Scribner*. *Id.* at 616, 161 A.3d at 9. Mr. Piper argued, as his Estate does before us, that the uncodified Section 2 of Ch. 666 demonstrated that the statute did not apply as a bar to "actions arising on or before June 30, 1970." *Id.* at 615, 161 A.3d at 9.

The Court of Special Appeals disagreed and pointed to the word "accruing," which is contained in the paragraph stating the statute's purpose[15] of Ch. 666, and the word

---

[15] The purpose of Chapter 666 was to "prohibit the bringing of actions based on injuries arising out of defective conditions o[r] improvements to real property." *See* Ch. 666. This paragraph also stated that "the provision of the Act shall not apply to actions *accruing* prior to its effective date." *See id.* (Emphasis added).

"arising," which is contained in Section 2[16] of Ch. 666. The intermediate appellate court determined that the words must be construed as having the same meaning. *Id.* at 620, 161 A.3d at 11. As that court explained, the purpose of CJP § 5-108 was to "set a time limit after which the discovery rule could not operate[.]" *Id*. at 619, 161 A.3d at 11 (quoting *Hillard & Bartko Joint Venture v. Fedco Sys., Inc.,* 309 Md. 147, 160, 522, A.2d 961, 968 (1987)). With that purpose in mind, the intermediate appellate court explained that "a cause of action based on a latent defect *or* injury that had not accrued under the discovery rule was cut off after twenty years from the time the improvement first became available for its intended use." *Id*. at 620, 161 A.3d at 11 (emphasis added). The Court of Special Appeals justified its interpretation of Mr. Piper's injury as the *discovery* of his mesothelioma, reasoning that to do otherwise "would create a class of unaccrued causes of action exempted from the statute where the latent defect or injury was present prior to July 1, 1970." *Id.* The Court of Special Appeals concluded, therefore, that "[s]uch a construction is contrary to the 'clear' purpose of Chapter 666." *Id.* (citing *Hillard & Bartko Joint Venture v. Fedco Sys., Inc.,* 309 Md. 147, 160, 522 A.2d 961, 968 (1987)).

The rationale of the Court of Special Appeals is misguided for several reasons. First, the intermediate appellate court disregarded the entire evolution of CJP § 5-108. *Duffy*, 232 Md. App. at 618, 161 A.3d at 10. It aptly noted that Art. 57, § 20 was amended in 1974. *Id.* at 619, 161 A.3d at 11. At that time, what is presently subsection § 5-108(e) was added as subsection (c), and the subsection provided that "[a] cause of action for an injury

---

[16] Section 2 of 1970 Maryland Laws, Chapter 666, provided, "*And be it further enacted*, That this Act shall not apply to any cause of action arising on or before June 30, 1970."

described in this section accrues when the injury or damage occurs." *Id.* at 619, 161 A.3d at 11 (quoting CJP § 5-108). The Court of Special Appeals explained that under CJP § 5-108(e) "'when the injury or damages occurs,' means when the injury or damage is discovered." *Id.* at 615, 161 A.3d at 8 (citing *Burns v. Bechtel Corp.*, 212 Md. App. 237, 243, 66 A.3d 1187, 1191, *cert. denied,* 434 Md. 312, 75 A.3d 317 (2013)). That court failed to recognize that what is presently subsection (e) "was originally drafted so as to avoid affecting the period within which a wrongful death action may be brought." *See* Revisor's Note to CJP § 5-108. Thus, the Court of Special Appeals determined that Mr. Piper discovered his injury in 2013 when he was diagnosed with mesothelioma. *Id.* The intermediate appellate court, however, neglected to take into consideration that since the 1974 code revision, the General Assembly has amended CJP § 5-108 three times and carved out additional exceptions to the protections afforded to defendants by the statute of repose. *See Rose*, 335 Md. at 361–71, 643 A.2d at 911–16.

As we have already discussed, the statute underwent substantive changes in 1991 as a result of the *thousands* of personal injury and property damage actions against product manufacturers of asbestos containing products. *See Eagle-Picher Indus., Inc. v. Balbos*, 84 Md. App. 10, 17, 578 A.2d 228, 231 (1990), *aff'd in part, rev'd in part*, 326 Md. 179, 604 A.2d 445 (1992) (citing *Cases Jam Civil Court Dockets,* DAILY RECORD, July 11, 1990, at B5, col. 1). The 1991 amendments to the statute of repose explicitly addressed defendants' liability in asbestos exposure cases by excluding "asbestos manufacturers and suppliers" from the protections under the statute. *Rose*, 335 Md. at 370, 643 A.2d at 915. The legislative history of the statute of repose refutes the reasoning of the Court of Special

21

Appeals because it is clear that the General Assembly intended to preserve the rights of individuals, who had suffered an asbestos-related injury, to file suit against manufacturers and suppliers of asbestos-containing products. *See id.*

With respect to the terms "arising" and "accruing," the Court of Special Appeals rationalized that "[t]o construe the term 'arising' in Section 2 to mean something different from 'accruing' in the preamble would create an ambiguity, if not an outright conflict[.]" *Duffy*, 232 Md. App. at 620, 161 A.3d at 11.[17]  To avoid such a conflict, the intermediate appellate court determined that Mr. Piper's cause of action would have had to both arise *and* accrue prior to June 30, 1970. *Id.*

In reaching this conclusion, the Court of Special Appeals looked beyond the plain language of Art. 57, § 20, in contravention to well-established principles of statutory construction. *See Duffy*, 232 Md. App. at 613–14, 161 A.3d at 7–8.  Ordinarily, "we look first to the normal, plain meaning of the language of the statute, read as a whole so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Koste*, 431 Md. at 25–26, 63 A.3d 582, 589 (2013) (quoting *Whitley v. Md. State Bd. Of Elections*, 429 Md. 132, 149, 55 A.3d 37, 47–48 (2012) (internal quotation marks omitted)).  Furthermore, "[t]he best source of legislative intent is the statute's plain language," and we consider the extraneous material, *e.g.*, a "purpose paragraph" for

---

[17] The Court of Special Appeals imprecisely referred to the purpose paragraph as the preamble to Ch. 666.  Whether the paragraph is considered the preamble or the purpose paragraph is of no moment.  The Court of Special Appeals erroneously relied on the paragraph to create a contradiction in spite of the plain language of the statute, which clearly expressed the legislative intent.

confirmatory purposes. *Kramer v. Liberty Prop. Tr.*, 408 Md. 1, 19, 968 A.2d 120, 130–31 (2009) (internal citations and quotation marks omitted).[18] Our "resort to legislative history is a confirmatory process; it is not undertaken to seek contradiction of the plain meaning of the statute." *Id.*

The Court of Special Appeals improperly, yet principally, relied on the purpose paragraph to determine that the statute applied to Mr. Piper's claims insofar as it contradicted the plain, unambiguous purpose espoused in Section 2 of Ch. 666, which stated that Art. 57, § 20, did not "apply to any cause of action arising on or before June 30, 1970." We neither seek, nor find, any contradiction between the purpose of the statute and the plain language of the statute. It is clear, given the plain language of the statute and its stated purpose, that the General Assembly intended for the statute to apply prospectively to actions that arose *and/or* accrued after its effective date.

The intermediate appellate court's analysis is problematic for another reason. The Court of Special Appeals maintained the premise that an injury occurs at the same time as its corresponding cause of action. *Duffy*, 232 Md. App. at 615, 161 A.3d at 8. That premise, however, fails to account for the nature of certain causes of action that do not accrue at the time the corresponding injury arises. *See Mattingly v. Hopkins*, 254 Md. 88, 92–93, 253 A.2d 904, 907 (1969). As we explained in *Mattingly*, "Sometimes the *happening* of the wrong, the *knowledge* of it and the *maturation* of the harm are

---

[18] See, for example, *Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368, 388–95, 61 A.3d 33, 45–48 (2013), for a discussion of how a statute's purpose paragraph can be helpful to ascertain legislative intent. In that case, the purpose paragraph was insufficient to rebut the presumption that the statute applied prospectively. *Id*.

simultaneous." *Id.* at 93, 253 A.2d at 907 (emphasis added). In those instances, "the recognition of the accrual of the cause of action is simple[.]" *Id.* When the "*happening* of the wrong, the *knowledge* of it and the *maturation* of the harm" do not occur simultaneously, the accrual of a cause of action is "complex" and "hybridiz[ed]." *Id.* (Emphasis added). Claims related to asbestos exposure are precisely the complex causes of action that *Mattingly* recognized. In asbestos-exposure cases, the *happening* of the wrong, the *knowledge* of it, and the *maturation* of the harm are not only sequential, but oftentimes the *knowledge* and the *maturation* occur long after the *happening* of the wrong. *See Lloyd E. Mitchell, Inc. v. Md. Cas. Co.*, 324 Md. 44, 60, 595 A.2d 469, 477 (1991).

Asbestos fibers lie dormant in the human body over a period of time. *See id.*[19] The fibers may eventually manifest into cancer, asbestosis, or mesothelioma. *Id.* The party exposed to asbestos becomes aware of the injury only after he or she starts to experience symptoms of a latent disease, which usually occur many years after exposure. *Id.* at 53–54, 595 A.2d at 473–74. We have determined, therefore, with respect to the development of asbestos-related diseases, "bodily injury occurs when asbestos is inhaled and retained in the lungs." *Id.* at 62, 595 A.2d at 478 (internal quotation marks omitted).

*Discovery Rule*

---

[19] When asbestos fibers enter the body, they burrow into the lungs causing irritation, inflammation, scarring, and at worst, cell mutations or cancer, and some of these effects take decades to manifest. *See* https://www.atsdr.cdc.gov/asbestos/health_effects_asbestos.html [https://perma.cc/9EUJ-N3DL.]

24

The Court of Special Appeals did not address the applicability of the discovery rule, or its relation to the statute of limitations in a civil action. We conclude that the discovery rule applies in the context of asbestos-related cases. Further, we conclude that Mr. Piper filed his complaint well within the three-year statute of limitations once he discovered that he had a cause of action.

This Court first recognized the import of the discovery rule over a century ago, in *Hahn v. Claybrook*, 130 Md. 179, 100 A. 83 (1917), and we have since held that the rule is generally applicable to all civil actions, absent any statutory provision to the contrary. *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 74–76, 904 A.2d 511, 520–21 (2006). The discovery rule "provides that a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." *Id*. at 75, 904 A.2d at 521 (quoting *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 334, 635 A.2d 394, 399 (1994)). The Rule has been applied in the context of latent diseases because "[t]hose who suffer injury due to occupational disease or their beneficiaries may, in appropriate circumstances, be blamelessly ignorant of the fact that a tort has occurred and thus, ought not be charged with slumbering on rights they were unable to ascertain." *Id*. (quoting *Harig v. Johns-Manville Prods. Corp.*, 284 Md. 70, 83, 394 A.2d 299, 306 (1978)) (internal quotation marks omitted). At the moment of discovery of the injury, the plaintiff can no longer be deemed ignorant, and his or her cause of action rightfully accrues. *See id*. at 76, 904 A.2d at 521. In our application of the discovery rule in asbestos-related cases, we have inevitably confronted the concepts of "arising" and "accruing" as they are used with respect to causes of action related to asbestos exposure.

25

We applied the discovery rule in a products liability action involving an employee of Johns-Manville Products Corporation ("Johns-Manville"), a business that fabricated and warehoused products containing asbestos. *Harig v. Johns-Manville Prods. Corp.*, 284 Md. 70, 72, 394 A.2d 299, 300 (1978). Twenty-one years after the employee left Johns-Manville, she was diagnosed with malignant mesothelioma. *Id*. at 73, 394 A.2d at 301. In *Harig*, we drew a parallel between professional malpractice cases and products liability cases involving latent diseases. *Id*. at 80, 394 A.2d at 304–05. We reasoned that the two types of cases shared a "critical factor" in that the discovery rule "gives to the individual exercising reasonable diligence the full benefit of the statutory period in which to file suit, while at the same time protecting the defendant from stale claims, as was intended by the statute [of limitations]." *Id*. at 79, 394 A.2d at 304 (quoting *Feldman v. Granger*, 255 Md. 288, 297, 257 A.2d 421, 426 (1969)). We observed the need to avoid the "possible injustice" that would proceed from strictly applying the statute of limitations in cases where plaintiffs lacked awareness of their inherently unknowable injuries. *Id*. at 80, 394 A.2d at 305. Consequently, we determined that justice would be best served in those cases if we applied the statute of limitations at the time when the plaintiff discovered, or, through reasonable diligence, could have discovered her injury. *See id.* Importantly, we held that "in situations involving the latent development of disease, a plaintiff's cause of action *accrues* when he ascertains, or through the exercise of reasonable care and diligence should have ascertained, the nature and cause of his injury." *Id*. at 83, 394 A.2d at 306 (emphasis added).

26

In *Georgia-Pacific Corp.*, we confronted whether the discovery rule applied to toll the limitations period for filing wrongful death and survival actions relating to the decedent's death from mesothelioma. 394 Md. at 64, 904 A.2d at 514. In that case, Mrs. Benjamin and her children filed their actions more than five years after Mr. Benjamin's death. *Id*. Although Mr. Benjamin's death certificate indicated that his cause of death was "cancer (metastatic mesothelioma)," the surviving family members did not discover the "nexus between asbestos exposure and cancer" until more than four years after his death. *Id*. at 67, 904 A.2d at 516. The question before us in *Georgia-Pacific Corp.* was when did the "causes of action against the manufacturers of asbestos containing products accrue." *Id*. at 74, 904 A.2d at 520 (quoting *Benjamin v. Union Carbide Corp.*, 162 Md. App. 173, 191–92, 873 A.2d 463, 474 (2005)).

In a nearly identical fashion as Respondent in the case *sub judice*, the defendant-asbestos manufacturers in *Georgia-Pacific Corp.* argued that under the wrongful death statute, "the three-year limitations period is triggered when death is discovered and not when the claimant discovers that the underlying cause of decedent's death was an occupational disease, *i.e.*, asbestos exposure." *Id*. at 77, 904 A.2d at 521. We clarified that the "two relevant inquiries necessary to determine the commencement date for a cause of action for wrongful death" were "(1) did the cause of action commence at the time of the decedent's death; or (2) did the cause of action commence when the beneficiaries became aware of the causal link between the decedent's illness and his exposure to a toxic substance?" *Id*. at 80, 904 A.2d at 523. We applied the discovery rule to the wrongful death statute and held that "an occupational disease-related wrongful death action accrues

27

when 'knowledge of the wrong upon which the action is based is discovered or should be discovered.'" *Id.* at 92, 904 A.2d at 530 (quoting *Waddell v. Kirkpatrick*, 331 Md. 52, 62, 626 A.2d 353, 358 (1993), *superseded in part*, *Parker v. Hamilton*, 453 Md. 127, 160 A.3d 615 (2017)).

In *Scribner*, rather than consider when a cause of action accrues for purposes of the statute of limitations, we considered when a cause of action involving a latent disease *arises* for purposes of the applicability of the statutory cap on noneconomic damages related to personal injury or wrongful death, CJP § 11-108. *Scribner*, 369 Md. at 394, 800 A.2d at 742. We declared succinctly in *Scribner* "[i]f there is no injury, there is no cause of action." *Id.* at 391–92, 800 A.2d at 740. This Court clarified that "[w]hether the injury sued upon is cancer or asbestosis, the plaintiff must, at the outset, establish that he or she has that disease and that it was caused, in whole or substantial part, by exposure to the defendant's asbestos-containing product." *Id.* at 392, 800 A.2d at 740. "When there is a latency period between the exposure or event that ultimately produces the injury and the manifestation or discovery of that injury, the injury will almost necessarily occur before it is, or as a practical matter can be, discovered." *Id.* at 384, 800 A.2d at 736. The Court's explanation in *Scribner* underscores the idea that a cause of action may not *accrue* at the time the injury arises, *i.e.*, when there is exposure to asbestos. For purposes of the applicability of the damages cap in CJP § 11-108, the *Scribner* Court held "as a matter of law" that the statute did not apply if the "last exposure undisputedly was before" the effective date for CJP § 11-108. *Id.* at 394, 800 A.2d at 742. In the present case, the Court of Special Appeals erroneously prioritized when Mr. Piper's causes of action *accrued* in determining that the

28

statute of repose applied *instead of* assessing when the underlying injury *arose* to determine the statute's applicability. *See Duffy*, 232 Md. App. at 615, 161 A.3d at 8. That a cause of action arises but does not accrue at the time of exposure does not diminish the legal significance of the underlying injury when considering the applicability of the statute of repose.

Both *Harig* and *Georgia-Pacific Corp.* addressed the discovery rule in the context of asbestos cases, whereas *Scribner* addressed the meaning of the word "arise" in the context of asbestos cases. In *Scribner*, we concluded that causes of action flowing from asbestos exposure *arise* at the time of the injury, *i.e.*, at the time of the exposure to asbestos. *See Scribner*, 369 Md. at 391–92, 800 A.2d at 740. Under the reasoning of *Harig* and *Georgia-Pacific Corp.*, the corresponding causes of action that follow from asbestos exposure *accrue* at the time of discovery of the latent disease, so that the plaintiff is charged with notice to act on the cause of action. *Harig*, 280 Md. at 83, 394 A.2d at 306; *Georgia-Pacific Corp.*, 394 Md. at 97, 904 A.2d at 533–34. When a cause of action "accrues" determines when the discovery rule applies in relation to the manifestation of a latent disease, whereas when a cause of action "arises" determines whether a statute applies in relation to exposure to asbestos, *i.e.*, the injury leading to potential causes of action.

Although our review of the asbestos-related case law is a perspective available only in hindsight, the General Assembly is presumed to have enacted the 1970 statute of repose with knowledge of our discussion of the accrual of causes of actions in *Mattingly*, which was issued in 1969. *See Allen v. State*, 402 Md. 59, 72, 935 A.2d 421, 428 (2007) ("The Legislature is presumed to be aware of our prior holdings when it enacts new

29

legislation[.]"). For the Court of Special Appeals to conflate the terms "arise" and "accrue" disregards the differences as well as the significance we have accorded these terms throughout our case law. Indeed, we have previously opined that our holdings in *Mattingly*, *Steelworkers Holding Co. v. Menefee*, 255 Md. 440, 258 A.2d 177 (1969), and *Callahan v. Clemens*, 184 Md. 520, 41 A.2d 473 (1945), in part, prompted the enactment of the 1970 statute of repose. *Hillard & Barko Joint Venture v. Fedco Sys., Inc.*, 309 Md. 147, 160, 522 A.2d 961, 968 (1987).[20] Disregarding the meaning assigned to "arise" and "accrue" in our jurisprudence led the Court of Special Appeals in this case to overlook the importance of the General Assembly's deliberate choice to use the word "arise" in Section 2 of Ch. 666. *See* Ch. 666, § 2 ("SEC. 2. *And be it further enacted*, That this Act shall not apply to any cause of action arising on or before June 30, 1970.").

We discern that when the General Assembly enacted Ch. 666 it intentionally used "arise" in Section 2 and "accrue" elsewhere. When enacted in 1970, Art. 57, § 20 applied prospectively and not retroactively. Both the stated purpose and Section 2 of Ch. 666 confirm our construction of the statute. The statute does not bar causes of action that have accrued, and by necessity had to have arisen, prior to July 1, 1970. *See* Ch. 666, ("A[n] A[ct] to . . . prohibit the bringing of actions based on injuries arising out of defective conditions or improvements to real property . . . [and] the provision of the Act shall not

---

[20] Our holdings in those cases involved application of the discovery rule to determine accrual of a malpractice cause of action against an architect (*Menefee)* and professional engineer (*Mattingly*). *Hillard & Barko Joint Venture v. Fedco Sys., Inc.*, 309 Md. 147, 160, 522 A.2d 961, 968 (1987). In *Callahan*, the discovery rule was applied involving a cause of action for negligence against a contractor. *Id.*

30

apply to actions *accruing* prior to its effective date.") (emphasis added). The statute also does not bar causes of action that have arisen prior to July 1, 1970, but have yet to accrue.

## Conclusion

Consistent with our holdings in *Harig*, *Scribner, and Georgia-Pacific Corp.*, we hold that for purposes of asbestos-related causes of actions, an injury arises at the time of last exposure to the asbestos-laden product. Because the statute of repose was enacted after the date of Mr. Piper's injuries, as a matter of law, the statute does not bar Mr. Piper's causes of actions. Therefore, the Circuit Court erred when it granted summary judgment in favor of Westinghouse.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS TO BE PAID BY RESPONDENT.**